JOHNSON HARDY v. THE STATE.

No. 5509.  Decided January 21, 1920.

1.—Murder—Evidence—Cross-examination—Declarations of Defendant.

Upon trial of murder, after defendant had testified that he had killed the deceased and another party and had given his reasons for so doing,

it was reversible error to permit State's counsel on cross-examination to ask him if it was not a fact that some three months prior to the date of said trial, he had stated to a witness that he, defendant killed two men, and that twelve men would try him, and if they convicted him and did not watch him he would get some of them, which defendant denied, when the State placed the said witness to whom the defendant was alleged to have made said statement on the witness stand and had him to testify that defendant did make the statement, and this although there was no objection made at the time to the predicate question or answer.

### 2.—Same—Name of Deceased—Variance—Requested Charge—Idem Sonans.

The court correctly refused a peremptory instruction of not guilty upon the ground of variance in the name of deceased, as McPherson and McPhersion are *idem sonans*, and there was no variance between the name alleged in the indictment and the proof.

### 3.—Same—Argument of Counsel—Practice on Appeal.

Where the judgment is reversed and the cause remanded for other reasons, the contentions arising from the argument of counsel need not be reviewed.

### 4.—Same—Evidence—Declarations of Defendant.

Where, upon trial of murder, certain declarations of defendant to a third party with reference to the alleged homicide were excluded as self-serving, and the relation in point of time of said testimony to the homicide was not shown, there was no error; however, if it should appear at another trial that said statement occurred reasonably near the date of the homicide the same should be admitted in evidence. Following: Cole v. State, 48 Texas Crim. Rep., 443.

### 5.—Same—Evidence—Description of Wounds.

Upon trial of murder, there was no error in allowing State's witnesses to describe the wounds on the bodies of the deceased and his companion, and that some of these wounds were on the backs of said bodies.

### 6.—Same—Charge of Court—Requested Charge.

Where, upon trial of murder, there was no evidence to support the proposition that defendant, just prior to the homicide accosted the deceased or his companion, and demanded that they leave his land, etc., and that he armed himself to protect his property, etc., there was no error in refusing a requested charge thereon.

Appeal from the District Court of Montgomery. Tried before the Hon. D. F. Singleton, judge.

Appeal from a conviction of murder; penalty, imprisonment for life in the penitentiary.

The opinion states the case.

*W. N. Foster, W. R. Cousins,* and *E. H. Carter,* for appellant.

On question of variance of name of deceased: Stewart v. State, 31 Texas Crim. Rep., 153; Chaney v. State, 59 id., 283; Neiderluck v. State, 21 Texas Crim. App. 320; 1 Branch Penal Code, Sec. 24.

On question of argument of counsel: Smith v. State, 68 S. W. Rep., 995; Smith v. State, 55 Texas Crim. Rep., 628, 117 S. W. Rep. 966.

On question of declarations of defendant as to killing two men and threatening petit jurors: Luttrell v. State, 51 S. W. Rep., 930; Lucas v. State, 95 id., 1055; Harrison v. State, 83 id., 699; Strange v. State, 42 id., 551; Brown v. State, 56 Texas Crim. Rep., 389, 120 S. W. Rep., 444.

On question of declarations of defendant prior to homicide: Simmons v. State, 31 Texas Crim. Rep., 227; Cole v. State, 48 id., 439; Everett v. State, 30 Texas Crim. App., 682.

On question of refusing requested charge: Humphrey v. State, 73 Texas Crim. Rep., 433, 165 S. W. Rep., 589; Burkhardt v. State, 83 Texas Crim. Rep., 228, 202 S. W. Rep., 516; Roberson v. State, 83 Texas Crim Rep., 238, 203 S. W. Rep., 349; Campbell v. State, 206 S. W. Rep., 348.

*Alvin M. Owsley*, Assistant Attorney General, for the State.—On question of *idem sonans*: Milontree v. State, 30 Texas rim. App., 151.

On question of defendant's declarations as self-serving: Hardeman v. State, 61 Texas Crim. Rep., 111, 133 S. W. Rep., 1056; Kinney v. State, 65 Texas Crim. Rep., 251, 144 S. W. Rep., 257.

LATTIMORE, JUDGE.—This is an appeal from the judgment of the District Court of Montgomery County, by which appellant was adjudged guilty of the murder of one Monroe McPhersion, and given a life sentence in the penitentiary.

The undisputed testimony shows that appellant killed deceased and one Gentry in 1904, and was arrested and placed in jail, from which he escaped, and was a fugitive from justice for many years, being apprehended, tried and convicted in 1919.

On his trial, appellant took the stand as a witness in his own behalf, and testified in chief, as well as upon his cross-examination, that he killed both of said men, and gave his reasons for so doing. There was no sort of question raised as to the fact that he shot both said parties with a gun, and killed them.

While on the witness stand, after he had told his story of said killing, on cross-examination the State asked him if it was not a fact that some three months prior to the date of said trial, he had stated to one Alton Utz, as follows: "I killed two men, and twelve men will try me; and if they convict me and don't watch me, I will get some of them." Appellant denied making the statement. Thereafter, the State placed the said Utz on the stand, and he stated that at the time mentioned, appellant did make the statement contained in the above quotation.

Appellant reserved a bill of exceptions to the admission of said testimony, which shows that the objection as first made to the testimony of said 'Utz, was that no sufficient predicate had been laid therefor, which objection was overruled, and the witness was permitted to answer. Appellant at once moved to exclude said testimony, upon the ground that the same was not material to any issue in the case, and because the same could only prejudice the jury against appellant, as said statement could only be construed as a threat against the jury. In this connection, counsel for the appellant stated to the court that they had not understood the language used by the State's attorney in laying his predicate, while appellant was on the stand, and hence did not realize that the language imputed to appellant in said predicate question, was a threat against the jury, and that if they had so ˙understood, they would have made the ˙further objection to the testimony of said Utz when it was offered, which was now made the ground of their motion to exclude said testimony, and then moved the court to exclude the testimony, as above stated. ˙This motion was overruled, and appellant took his bill of exception, setting forth the matters just referred to.

The trial court approved said bill, with the explanation that appellant made no objection to the predicate question when same was asked of appellant while on the witness stand. We are of the opinion that the action of the trial court, in refusing this motion and in permitting this evidence to remain with the jury, was error. The fact that no objection was made to the predicate question or answer, does not estop appellant. It is well established that one may not be impeached by proof of statements as to matters not material, and if a party attempting to lay a predicate does so, by asking about matters not material, he does so at his peril; and if the witness answer without objection from the opposite party, such answer ends the inquiry, and the party seeking to lay the predicate is not allowed to prove the falsity of such answer. So, it follows in the instant case, that there was no need of objection to the predicate question. Was the matter contained therein material to any issue in this case? We think, in view of appellant's testimony, and admission of the fact that he had killed both said men, that the question and answer sought, could shed no light on the case; but if the question had only been, if he had not stated to Utz that he had killed two men, and stopped there, we would have˙ held the matter harmless. If the question be asked as to the materiality of the predicate in its entirety, truth and fairness compel us to say that it was not material to any issue. Not only was the State's proof clear and abundant that appellant killed both of said men, but this was uncontradicted by any evidence of the appellant, and as stated, he himself had taken the stand and sworn positively that he did kill them. We are unable to see how proof of a statement by him *ex-cathedra,* would have any proba-

tive force to establish the fact that he did kill them, and are compelled to believe that such evidence was sought and introduced solely because of the other matters contained therein, besides the statement that appellant had killed the two men. It appears to us that the remainder of said statement contains matters which were most injurious to appellant. Whether the alleged threat against the jury was offered as impeaching evidence, or as an original statement made by the accused, it should not have been admitted, or if it was given in the testimony by reason of the failure to make proper objection, under a misapprehension, then it should have been stricken out on a motion. It is very difficult for us to see how a jury could be that fair and impartial tribunal which is guaranteed by our Constitution, when it was revealed to them by testimony, that the man whose life and liberty was dependent on their calm judgment, had said of them that if they decided that case against him, they would better watch out, as some of them would be his next victims.

>"Mankind is unco-weak, and little to be trusted;
>Should self the wavering balance shake, 'tis rarely
>                right adjusted."

were the truthful words of a great poet-philosopher; and when the jury, who were just ordinary humans, were told that their own safety, and lives even, were threatened by the man on trial, it might have been thus made much easier for them to send the threatener to the penitentiary for life, and thus put him in a place where he could not do them any harm. We think injury probable from the admission of this testimony, and in view of this verdict, sufficient to demand the reversal of this case.

In our opinion, the trial court correctly overruled the motion of appellant for a peremptory instruction of not guilty, upon the ground of variance in the name of deceased, as alleged in the indictment and as shown by the testimony. We are of opinion that *McPherson* and *McPhersion* are *idem sonans.*. See Section 23, Branch's Ann. Penal Code; Art. 456, Vernon's C. C. P., and authorities cited.

The contentions arising from the argument of counsel for the State, will likely not occur on another trial.

By two bills of exception, a review is sought of the action of the trial court in refusing to allow the witness Johns to testify to certain statements made to him by the appellant prior to the homicide. The statements were substantially that appellant told witness that he believed the presence of the witness with appellant, kept deceased and Gentry from killing him on one occasion; and also that appellant told him that said parties had threatened his life, and he was afraid to have lights in his house at night, or sit by an open window, etc. This evidence was offered as showing the condition of appellant's mind, and was objected to as being self-serving. As

presented here, no error appears. The relation in point of time of said evidence to the homicide, is not shown, and for aught we can tell, the alleged statement was made months prior thereto. On another trial, if it should appear that said conversation and statement occurred reasonably near the date of the homicide, we think same should be admitted. Cole v. State, 48 Texas Crim. Rep., 443, Practically the same evidence was admitted when said witness detailed what occurred at the time he and appellant met and talked with one Palmer.

We do not think there was any error in allowing the witnesses Sterrett and Anderson, to describe wounds on the bodies of deceased and Gentry, and to state that said wounds or some of them, were on the backs of said bodies.

The charge of the trial court was exceptionally full and fair. The special charges one and two asked by appellant, were properly refused. As we read this record, and the evidence of appellant, there is nothing therein to support the proposition that appellant, just prior to the homicide, accosted the deceased or Gentry, and demanded that they leave his land, and desist from cutting and removing his timber, or that he armed himself for the purpose of seeking an interview with them, to protect his property. He said, in his testimony, that he was hunting for his horse, and kept hearing a bell, and on going up the bottom, he heard loud talking and cursing and went to it, and saw Gentry and deceased, and he went right up to them, and said: "Now, Gentry, you are taking my posts are you?" and that Gentry denied it with an oath, and further, called him an opprobrious name; and grabbed a stick and started towards him; and he threw his gun on Gentry who turned away, and that he shot Gentry. That deceased then started toward the wagon on which there was an axe and a few posts, and he shot deceased before he got to the wagon.

The witness Jones, who saw appellant first after the shooting, said that appellant told him that he had shot Gentry and deceased, and said that they cursed him, and that he could not take that. This evidence did not call for the issues contained in said special charge.

For the errors mentioned, the judgment is reversed, and the cause remanded.

*Reversed and remanded.*