EL PUEBLO, DEMANDANTE Y APELADO, *v.* CRUZ, ACUSADO Y APELANTE.

No. 2059.—*Visto:* Julio 16, 1923. *Resuelto:* Mayo 29, 1924.

ASESINATO—PRUEBA—CONCLUSIONES DE LOS TESTIGOS—ERROR NO PERJUDICIAL.— En un caso de asesinato, cuando la conclusión de un testigo sobre la muerte de la víctima va seguida de una exposición detallada de los hechos en que se funda, el error al no eliminar la conclusión no es perjudicial.

ID.—PRUEBA DE REPUTACIÓN—ERROR NO PERJUDICIAL.—Se resolvió en el presente caso que si bien la respuesta del detective en cuanto a que conocía al acusado "pues no es el primer caso en que interviene con él" era claramente impertinente, sin embargo el hecho de no haberse formulado objeción a la pregunta que originó tal respuesta, el de que la moción para eliminarla era más bien vaga y general y el de que tomando en consideración todas las circunstancias se concluye que el veredicto demostró más bien simpatía que prejuicio hacia el acusado, permiten concluir que el error al no eliminar tal respuesta no requiere la revocación.

ID.—INSTRUCCIONES—COMENTARIOS DEL JUEZ SOBRE LA GRAVEDAD DEL DELITO.—No incurre en error el juez que en sus instrucciones al jurado hace comentarios

acerca de la gravedad del delito, considerado en sí mismo y por su propia naturaleza, sin relacionar esa gravedad del hecho criminal con el acusado a quien se imputa su comisión.

Sentencia de *M. Rodríguez Serra,* J. (San Juan, Distrito Segundo), condenando al acusado a ocho años de presidio por homicidio voluntario. *Confirmada.*

*F. Cervoni,* abogado del apelante; *José E. Figueras, Fiscal,* abogado del apelado.

El Juez Asociado Señor Hutchison, emitió la opinión del tribunal.

El apelante fué acusado por un delito de asesinato, convicto de homicidio voluntario y alega haberse cometido por la corte inferior los siguientes errores:

"1º. La corte se negó a eliminar la parte de la declaración del testigo Rafael Igaravídez que dice 'que mientras el policía Juan Fernández llevaba a cabo la captura de Chuchú, éste mató al policía.'

"2º. La corte se negó a eliminar la parte de la declaración de Rafael Igaravídez, que dice que Fernández cayó por una herida de bala que recibió.

"3º. La corte se negó a eliminar la parte de la declaración del detective Inocencio Díaz que dice que hace tiempo conocía a Chuchú pues no es el primer caso en que interviene con él.

"4º. La corte desestimó la moción de *nonsuit* presentada por la defensa, en sentido de que la corte ordenara al jurado absolver al acusado por no justificar la prueba presentada, el delito imputado al acusado.

"5º. La corte en sus instrucciones dijo al jurado: 'Estamos en presencia de un delito grave, del delito más grave de todos los que se cometen contra la persona: el delito de asesinato.'

"6º. La corte instruye: 'Tenéis aquí prueba de dos clases. Prueba directa . . . . y la prueba circunstancial de los que vieron al herido y vieron al muerto; la del médico, la del capitán, la del detective, que vieron como huía, como escapaba el agresor.'

"7º. La defensa no ha presentado prueba y sus argumentaciones, como habéis oído, han tendido a establecer posibilidades, hipótesis de la inocencia del acusado.

"8º. Si vosotros llegáis al convencimiento de que este hombre estaba allí, en acecho, es decir oculto, que vió venir a los policías, se preparó para dar la muerte al que se le acercara, que acechaba a

esos policías; si llegáis a ese convencimiento, si ese convencimiento está libre de duda razonable, será vuestro deber declarar al acusado culpable de asesinato en primer grado.

"9º. La defensa ha presentado a la corte, para que os instruya, ciertas indicaciones, algunas de las cuales voy a aceptar, si bien creo que ya están dichas las voy a repetir.

"Si la causa de la muerte no aparece satisfactoriamente probada ante el jurado el acusado debe ser absuelto. . . . .

"Sobre este punto parece que la defensa ha intentado establecer la teoría de la posibilidad de la muerte por otra causa. Vosotros habéis oído la declaración del doctor Rodríguez, fué repreguntado, expuso su opinión, dijo exactamente el sitio en que el interfecto recibió la herida, describió ante vosotros la estructura anatómica de ese sitio, nombró las arterias que cruzan casi superficialmente por esa región del cuerpo. El certificó la muerte y la causa de ella. Oísteis su opinión y oísteis su declaración. Si creéis lo que él dijo, si creéis que la muerte fué producida por la herida, de acuerdo con la opinión del doctor, y si creéis que el autor de la herida fué Gómez y las circunstancias en que la produjo, vuestro deber será traer un veredicto de culpabilidad en el grado que vosotros creáis, ya de asesinato en primer grado, ya de segundo grado, ya de homicidio voluntario."

La moción para eliminar la parte de la declaración a que se alude en el primer señalamiento de error se fundó en "que la muerte debía probarse con mejor evidencia." Entonces se le preguntó al testigo: "¿Cómo fué que el acusado mató al policía?", a lo que el abogado se opuso diciendo que no estando probado todavía el hecho de la muerte no podía preguntarse sobre la forma de la muerte. Entonces el fiscal presentó la certificación de defunción del policía, que fué admitida sin objeción.

La parte de los autos que sigue inmediatamente a este incidente es como sigue:

"Continúa declarando el testigo que esa tarde en momentos en que se ocupaba con los guardias a sus órdenes de la captura de Chuchú, cuando efectuaba el arresto de Candelario Rosado en una casa cercana al sitio donde falleció Fernández sintieron varios disparos de revólver y vió el testigo caer al guardia Juan Fernández y, momentos después, vió al acusado tirarse del sitio donde estaba

y desaparecer por allí.—Dice el testigo que Fernández cayó por una herida de bala que recibió.—La defensa pide la eliminación de la respuesta y la Corte niega la eliminación.—La defensa tomó excepción.—Que inmediatamente que vió caer al guardia Fernández corrió al sitio de donde se había tirado Chuchú acompañado de Inocencio Díaz y de Candelario Rosado. Y encontraron al Cabo Juan Veintidós herido y a Fernández muerto.—Que eso ocurrió en Bayamón en un terreno accidentado; que vió a Chuchú Gómez en momentos en que colgándose de la rama de un árbol desapareció.—No vió que el policía le hiciera nada a Chuchú.—Que el policía y el cabo subían hacia el monte entre una abra que forman allí dos cerros y el declarante vió los disparos, vió caer al policía, a quien luego vió muerto.''

Si la conclusión en cuestión no fuere una relación concisa de los detalles envueltos, entonces claramente que el error cometido al negarse la corte a conceder la moción de eliminación quedó subsanado por la pronta exposición de los hechos en los cuales se fundaba la conclusión.

El error, de haber alguno, alegado en el segundo señalamiento, de igual manera no era perjudicial por razones semejantes.

La cuestión levantada en el tercer señalamiento no está tan fuera de dudas. El testigo, después de declarar con respecto a los disparos hechos al policía por el acusado, ya había manifestado que sabía que fué Jesús Cruz Gómez, porque lo conocía y lo había visto salir de la casa para el cerro unos quince minutos antes de llegar a la casa el testigo. Entonces, después de dar algunos otros detalles, se dice en los autos que el testigo:

''Preguntado por el Fiscal declara que hace algún tiempo conoce a Chuchú pues no es el primer caso en que interviene con él. La defensa pide la eliminación de esta última parte de la declaración, o sea la parte que dice que no es la primera vez que interviene con Chuchú, porque tal declaración tiende a levantar prejuicios en el ánimo del jurado. El Fiscal se opone a la eliminación argumentando que las manifestaciones del testigo son explicativas de por qué conoce a Chuchú y la Corte la desestima. La defensa tomó excepción.''

Tal práctica no debe recomendarse. Aunque el pretexto de que la información aportada de tal modo por un bien conocido detective, miembro de la Policía Insular, que explica cómo fué que el testigo llegó a conocer al acusado es bastante plausible, tal vez para considerarse como una circunstancia atenuante, queda, sin embargo, el hecho de que no hubo ninguna necesidad de tal explicación. El efecto natural y lógico y la clara tendencia de tal manifestación, como dijo la defensa, sería llevar prejuicios a la mente del jurado. Si originó o no una impresión real, es otra cuestión.

La pregunta era impertinente y no debió haber sido hecha por el fiscal, que debió allanarse inmediatamente a la moción para eliminar la contestación. No habiéndolo hecho así, el juez sentenciador debió haber concedido la moción manifestando al jurado que hiciera caso omiso de la referencia a investigaciones anteriores y explicándoles que el acusado no estaba sometido a un juicio por ningún delito que no fuera el imputado en la acusación; que su carácter no estaba puesto a discusión y se presumía que era bueno.

Si hubo alguna otra circunstancia en los autos en la cual pueda basarse una sospecha de verdadero prejuicio, cualquiera duda razonable en la mente de esta corte en relación con la instrucción como se le dió al jurado, o cualquier otra cosa hubiera podido influir en ellos indebidamente al emitir un veredicto de culpabilidad, entonces el error aquí alegado sería bastante para cambiar la balanza y justificar una revocación.

Pero por otra parte, no se formuló ninguna objeción a la pregunta que motivó la respuesta que fué luego impugnada; la moción para eliminar más bien fué vaga y general, y no parece que se contestara de algún modo la indicación que hizo el fiscal sobre la admisibilidad de la declaración. No existe base en los autos para las afirmaciones del abogado contenidas en el alegato del apelante respecto al estado de la opinión pública; y tomando todo en consideración el veredicto del jurado demuestra simpatía hacia el acu-

sado más bien que prejuicio contra él. La teoría de la defensa, y al parecer la única razón provechosa en que hubiera podido fundarse cualquier esperanza de absolución, era la posibilidad por sí sumamente remota de que a falta de una autopsia, la muerte pudo haber resultado de alguna causa que no fuera por una herida producida por el acusado.

El Fiscal no trató de observar el mismo procedimiento de investigación, ya en el interrogatorio del detective, o en el de cualquier otro testigo. La declaración en sí, es a lo sumo una simple insinuación, y aparte de la presunción de perjuicio, de existir alguno, o de la inferencia que ha de hacerse de la naturaleza del relato mismo, nada existe en los autos que indique verdadero perjuicio. En verdad, según ya se ha indicado todas las circunstancias indican una conclusión contraria.

Por tanto, nos vemos obligados a declarar, que el error alegado en el tercer señalamiento, apareciendo como aparece solo sin estar sostenido por ningún otro aspecto del caso, o, en vista de las circunstancias que indican de modo positivo la ausencia de verdadero prejuicio, no es motivo suficiente para ordenar un nuevo juicio.

El razonamiento bajo el cuarto señalamiento es que no habiéndose hecho la autopsia, la prueba no demuestra fuera de duda razonable que la herida que recibió Fernández no fué causada por otro compañero en la descarga cerrada a que hizo referencia un testigo, ni, en todo caso, que la muerte fué consecuencia de la herida. Será bastante con decir que no podemos convenir con este parecer del asunto.

La contestación al quinto señalamiento puede verse en el caso de *El Pueblo* v. *Boria,* 12 D.P.R. 170, donde esta corte resolvió, citando del sumario, que:

"No incurre en error el juez que en sus instrucciones al jurado hace comentarios acerca de la gravedad del delito, considerado en sí mismo y por su propia naturaleza, sin relacionar esa gravedad del hecho criminal con el acusado a quien se imputa su comisión."

Los restantes señalamientos no requieren gran consideración. El cargo, en conjunto, fué amplio y completo, razonable e imparcial, y no desfavorable o perjudicial a ningún derecho sustancial del acusado.

*Debe confirmarse la sentencia apelada.*