The People of Puerto Rico, Plaintiff and Appellee, *v.* Francisco Pou Orozco, Defendant and Appellee.

No. 7634. Argued June 20, 1939.—Decided July 14, 1939.

*Francisco González Fagundo,* for appellant. *R. A. Gómez, Prosecuting Attorney,* for The People, appellee.

Mr. Justice De Jesús delivered the opinion of the Court.

The appellant was convicted of a crime of murder in the second degree and sentence to twelve years in prison. The evidence of the district attorney tends to show that on Octo-

ber 12, 1936, the deceased, Domingo Rosa, was in front of a meat market in Humacao. He was begging the witness Severo Fonseca, an employee of said market who was at that time talking to the witness Aguedo Romero, to give him two cents to buy rum. At that moment the accused arrived and without crossing any words, stabbed Rosa in the back with a knife, perforating the auricle and the diaphragm as a consequence of which he died a few moments later in a clinic of that city. That upon being wounded the deceased turned toward the accused and said to him: ''Paco you have wounded me;'' to which the latter answered: ''That is in payment for what you did to me last night.'' That the deceased who at the moment had an old valise with him, ran with it toward the meat market, fell to the ground and the accused went to the police station. On his way he found a cart of oranges from which he took one, peeled it with the homicidal weapon and continued with it on his way to the police station. From the evidence of the district attorney it appears that deceased was a drunkard and a bully of very bad reputation, that he did not work and spent his time begging for money to buy rum, being in the habit sometimes of assaulting whoever refused to give him money.

The accused tried to prove that he killed Domingo Rosa in self defense. That five or six years before, the deceased had wounded him; that the night before the murder he had tried to kill the accused and that that morning he was looking for him with a *machete* to kill him, going to the house of accused and inviting him to come out, to which the latter, closing his door, refused. That on that same day the accused had been told that deceased had said he was going to kill him. That he tried to find Corporal Soto to inform him of what was going on with the deceased and that he did not find him in his house; that he then went to the police station to look for said officer. That on his way he found a cart of oranges. That he bought one and picked the knife from the cart and continued peeling the orange when about ten

steps further on he suddenly met Domingo Rosa. That the latter immediately gave him a slap in the face and at the same time tried to draw a weapon, the accused being unable to determined whether he tried to draw it from the valise or from his clothes. That it was at that moment when the accused wounded the deceased with the knife that he had taken from the cart of oranges.

The jury did not believe the evidence presented by the accused to establish self defense and the transcript of the evidence clearly shows that in doing so, the jury correctly decided the conflict in the evidence.

In support of his appeal, the accused assigns nine errors which we will state in considering them.

The first error states as follows:

"*First.*—The court erred in not permitting the witness Aguedo Romero López to be cross-examined after he had stated that he was a single man, in regard to whether or not he kept a woman, (page 26 T. E.) because with that question an attempt was being made to attack the credibility of the witness and to prove what his occupation was and to investigate whether he carried on relations with a loose woman."

This alleged error refers to an incident which took place while the defense cross-examined Aguedo Romero, the first witness of the prosecution. The defense asked the witness if he was single or married. He answered that he was single. Immediately after this question he was asked: "Do you not keep a woman?" Before the witness could answer the district attorney objected and the judge upheld the objection. The defense then took the following exception:

"We take exception to the ruling of the court because we are trying to attack the credibility of the witness and prove his habits."

The question objected to was evidently impertinent. The fact that the witness although single, was living illicitly with a woman can in no way affect his credibility, and assuming that he had answered negatively, the defense could not have presented evidence to impeach him because a witness may

not be asked a question which is immaterial or collateral to the issue in controversy to later impeach his testimony. See *Underhill's Criminal Evidence,* 4th edition, Sec. 429, page 876; *Hardy* v. *State,* 8 A.L.R. 1357, 1359; *Johnson* v. *Palomba Co.,* 80 A.L.R. 441; *Barlow Brothers Co.* v. *Parsons,* 49 Atl. 205.

Furthermore, this Court has decided that it is not permissible to attack the credibility of a witness with evidence of acts more or less reprochable. *People* v. *Alméstico,* 18 P.R.R. 314. And in the case of *Camacho* v. *Balasquide,* 19 P.R.R. 564, it was said that to impeach the reputation and credibility of a witness no evidence may be admitted tending to show specific acts of depravation or immorality. Finally in the case of *People* v. *Ramírez de Arellano,* 25 P.R.R. 243, it was decided that on cross-examination, a witness may not be asked under pretext that his testimony is going to be impeached or preparation is being made for it, questions which do not affect his credibility and that the party who asks them has no right to make them manifest for other purposes. For the foregoing reasons we must' conclude that the first assigned error does not exist.

The assignments of errors numbers 2, 3, 4, 6, 7, 8 and 9 refer to the conduct of deceased. We shall group and discus them jointly. They state as follows:

"2. The court erred in not permitting the defense to ask the following question to the witness Severo Fonseca: 'On some occasions, besides slapping the person who refused to comply with his wishes by giving him money, did he not also stab them?'

"3. The court erred in ordering the elimination from the record of the testimony of the accused stating that a scar that he had on his face had been made by the deceased Domingo Rosa about five or six years (sic). (Pages 86 and 87 T. of E.)

"4. The court erred in not permitting the accused to testify as to the conduct of deceased and as to specific acts carried out by him in regard to the accused, and in ordering the elimination of all the details testified to by the said accused. (Pages 95 and 96 T. of E.)

"6. The court erred in not permitting the witness Benigno Soto to testify as to the complaints that he had filed against the deceased Domingo Rosa for the crime of aggravated assault and battery. (Page 115.)

"7. The court erred in not permitting the witness Félix Calzada to testify as to the reputation of the deceased Domingo Rosa, since he had had him in jail twenty-eight times.

"8. The court erred in not permitting that a record of the penal history of Domingo Rosa for the crimes of carrying weapons be presented in evidence. (Pages 134.)

"9. The court erred in not permitting that the witness Francisco Cruz be asked if he had had any trouble with Domingo Rosa because the latter tried to take some money away from him by force, and whether there was something lacking from the body of the deceased. (Pages 145–146.)

The evidence of the district attorney as well as that of the defense are perfectly in accord as to the fact that deceased was not a person of good reputation. We have seen what the witness of the district attorney testified in regard to his conduct. The witnesses of the defense stated more or less the same things. This question therefore, was not in controversy and would have been of vital importance for the accused if the jury, from the evidence presented to it, could have seriously considered the contention of the accused in regard to self defense. But the evidence of the accused in this respect is so weak that the jury did not give it any credit whatsoever and did not even reduce the degree of the crime to voluntary manslaughter, thereby suggesting that it did not believe that at the moment of the crime there existed any assault on the part of the deceased against the accused. It believed the evidence of the district attorney in the sense that without any provocation or words whatsoever, the accused stabbed the deceased in the back. We must suppose that if the jury had believed that although not a case in self defense, the deceased had in some manner attacked the accused at the moment of the crime, in such case, according to the instructions given by the court, its

verdict would have been of voluntary manslaughter and not of murder as was brought. The jury not believing that this was a case of voluntary manslaughter, either justifiable or not, the inevitable conclusion is that it did not believe the evidence of the defense in regard to the slap in the face which the accused alleges was given to him by deceased. Therefore, the omission of any conclusive evidence of bad conduct on the part of deceased, in addition to that which the jury had already heard from the witnesses of the district attorney as well as of the defense, could in no wise prejudice the substantial rights of the accused, since assuming that deceased was as bad as can be imagined, even so, the accused nor any other person would have been justified for that reason only to deprive him of his life. The fact that deceased five or six years before or even the night before the day of the happenings had assaulted the accused, is too remote evidence and consequently inadmissible to establish self defense. In our opinion, the errors discussed herein were not committed and had they been committed, we would have to conclude that they did not prejudice the substantial rights of the accused and therefore are not sufficient basis for a reversal of the judgment. *People* v. *Forte,* 119 A.L.R. 1198; *People* v. *Ibern,* 31 P.R.R. 867; *People* v. *Cruz,* 33 P.R.R. 195.

██ Let us now consider the fifth and remaining error assigned by the appellant. The assignment states as follows:

"5. The court erred in allowing the district attorney to ask the accused about specific acts committed by him, as appears on pages 107 and 109 of the transcript."

On page 106 of the transcript of the evidence the following cross-examination of the accused by the district attorney appears:

"Q.—The first question which your lawyer made to you was the following; with this I am through with you . . . if you had been convicted at any time previous to this act. Do you remember that question? And you answered no.

"A.—Yes, sir, I have been about ten days . . .

"Q.—Now I am going to help you to refresh your memory to .see if you remember if on or about December 23, 1930, you did not serve a sentence of thirty days in the municipal jail for aggravated .assault and battery?

DEFENSE: We object, Your Honor.

"JUDGE: Reasons . . .

"DEFENSE: For the same reason that the district attorney has .objected that specific acts be testified to.

"JUDGE: The intention of the district attorney . . . ?

"DISTRICT ATTORNEY: The purpose of the question is to impeach the witness.

"JUDGE: The question is upheld . . .

"DEFENSE: We take exception.

"JUDGE: If it is for the purpose of attacking the credibility of the witness.

"DEFENSE: We take exception.

"DISTRICT ATTORNEY: And tell me also if on October 17 . . .

"DEFENSE: We object the question.

"JUDGE: Denied.

"DEFENSE: We take exception to the ruling of the court because in the first place it is a question the answer to which the district attorney knows beforehand, and he cannot try to bring evidence against what he himself gets out of the witness; and in the second place, because the testimony refers to specific acts which the district attorney has not permitted, nor the court either, in regard to the reputation of deceased and only in the case that specific acts of the deceased had been testified to, could specific acts of the accused be testified to, and although it involves a misdemeanor it is not a motive to attack the credibility of the witness.

"DISTRICT ATTORNEY: I am going to permit myself to explain, Your Honor.

"JUDGE: You may.

"DISTRICT ATTORNEY: It is this, when a party puts in issue the reputation, then on cross-examination the other party may destroy that question by evidence of specific acts.

"JUDGE: The court wishes the stenographer to look in the direct examination of the witness and see if he testified or did .not testify that he had never been in jail or had never been imprisoned.

"DEFENSE: He testified that he had never been prosecuted.

"JUDGE: If he testified that he had never been prosecuted, the court admits all the evidence to impeach the testimony of the witness in regard to that.

"DEFENSE: We respectfully take exception to the ruling of the court."

The defense, in asking the accused if he had ever been prosecuted—the latter answering in the negative—, opened the door to the district attorney to examine the accused on cross-examination in the manner in which he did. There was no error whatever in permitting the district attorney to cross-examine a witness in regard to a matter which had been the object of the direct examination.

As in our opinion none of the nine errors alleged by the appellant exist, the appeal should be dismissed and the judgment appealed from, affirmed.

Mr. Justice Travieso took no part in the decision of this case.