El Pueblo de Puerto Rico, demandante y apelado, *v.* Francisco Pou Orozco, acusado ·y apelante.

Núm. 7634.—*Sometido:* Junio 20, 1939. *Resuelto:* Julio 14, 1939.

*Francisco González Fagundo,* abogado del apelante; *R. A. Gómez, Fiscal,* abogado de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

El apelante fué convicto de un delito de asesinato en segundo grado y sentenciado a doce años de presidio. La prueba del fiscal tiende a demostrar que el 12 de octubre de 1936 el interfecto Domingo Rosa se hallaba frente a una carnicería en Humacao. Pedía al testigo Severo Fonseca, empleado de dicho establecimiento, quien a la sazón hablaba con el testigo Aguedo Romero, que le diera dos centavos para comprar ron. Que en esos momento llegó el acusado y sin

que mediaran palabras de clase alguna hirió con un cuchillo por la espalda a Rosa, atravesándole la aurícula y el diafragma, a consecuencia de lo cual falleció momentos después en una clínica de aquella ciudad. Que al sentirse herido el interfecto, se volvió hacia el acusado y le dijo: "Paco, me has herido;" a lo que éste contestó: "Para que me pagues la que me hiciste anoche." Que el interfecto, que en aquellos momentos andaba con una maleta vieja, corrió con ella hacia la carnicería, cayó al suelo y el acusado se dirigió al Cuartel de la Policía. En su camino encontró un carrito de chinas del que cogió una, la mondó con el arma homicida y siguió, comiéndosela, hacia el cuartel. De la prueba del fiscal surge que el interfecto era una persona dedicada a la bebida, pendenciera, de muy mala reputación, que no trabajaba y se dedicaba a pedir centavos para tomar ron, acostumbrando a veces agredir al que le negaba dinero.

El acusado trató de probar que mató a Domingo Rosa en defensa propia. Que cinco o seis años antes el interfecto le había inferido ciertas heridas, que la noche antes del crimen trató de matar al acusado, y que aquella mañana lo buscaba armado de un machete para matarlo, yendo hasta la casa del acusado e invitándole que saliera de la casa, a lo que éste se negó, cerrando sus puertas. Que aquel mismo día se enteró el acusado que el interfecto había dicho que iba a matarlo. Que trató de conseguir al Cabo Soto para informarle lo que le pasaba con el interfecto y no lo encontró en su casa, dirigiéndose entonces al cuartel en busca de dicho funcionario. En su camino se encontró con un carrito de chinas. Compró una y tomó el cuchillo del carrito y siguió caminando, mondando la china, cuando como a los diez pasos súbitamente se encontró con Domingo Rosa. Que éste inmediatamente le tiró una bofetada y al mismo tiempo trató de sacar un arma, sin que pueda precisar el acusado si trataba de sacarla de la maleta o del traje que llevaba. Que en ese momento fué que el acusado, con el cuchillo que había tomado del carrito de chinas, hirió al interfecto.

El jurado no dió crédito a la prueba que para establecer la defensa propia presentó el acusado y una lectura de la transcripción de evidencia demuestra claramente que al así hacerlo el jurado dirimió correctamente el conflicto de la prueba.

En apoyo de este recurso el acusado señala nueve errores que iremos exponiendo al considerarlos.

El primer error dice así:

· "1°. La Corte cometió error al no permitir que al testigo Aguedo Romero López se le preguntara, después de decir que era soltero, si no tenía una mujercita, (página 26 de la transcripción de la evidencia) porque con esa pregunta se trataba de aquilatar la veracidad del testigo y probar a qué se dedicaba y tratar de investigar si él no tenía relaciones con una mujer de vida airada."

Este alegado error se refiere a cierto incidente acaecido mientras la defensa examinaba a Aguedo Romero, primer testigo del fiscal. Le preguntó la defensa si el testigo era soltero o casado. Contestó que era soltero. Inmediatamente después de esta pregunta volvió a interrogarle: "¿No tiene una mujercita?" Antes de que el testigo contestase se opuso el fiscal y el juez lo sostuvo. Tomó entonces la defensa la siguiente excepción:

"Tomamos excepción de la resolución de la Corte, porque estamos tratando de aquilatar la veracidad del testigo y probar a qué se dedica él."

La pregunta objetada era evidentemente impertinente. El hecho de que el testigo, siendo soltero, viviera con una mujer ilícitamente, en nada podía afectar su veracidad, y asumiendo que él hubiese contestado negativamente, la defensa no hubiera podido presentar evidencia para impugnarlo, porque no puede interrogarse a un testigo sobre una cuestión inmaterial o colateral a las cuestiones en controversia para luego impugnarlo. Véase *Underhill's Criminal Evidence,* 4a. ed., sec. 429, pág. 876; *Hardy* v. *State,* 8 A.L.R. 1357, 1359; *Johnson* v. *Palomba Co.,* 80 A.L.R. 441; *Barlow Brothers Co.* v. *Parsons,* 49 A. 205

Además, este tribunal ha resuelto que no es permisible atacar la veracidad de un testigo con prueba de determinados actos más o menos reprochables. *Pueblo* v. *Alméstico*, 18 D.P.R. 320. Y en el caso de *Camacho* v. *Balasquide*, 19 D.P.R. 590, se dijo que para impugnar la reputación y veracidad de un testigo no puede presentarse prueba tendente a demostrar actos específicos de su prostitución o inmoralidad. Finalmente, en el caso de *Pueblo* v. *Ramírez de Arellano*, 25 D.P.R. 263, se resolvió que en el examen de repreguntas un testigo no puede ser examinado, so pretexto de que va a impugnarse su veracidad o a prepararse para ello, sobre cuestiones que no afectan a su crédito y que la parte que repregunta no tiene derecho a ponerlas de manifiesto para otros fines. Por lo expuesto tenemos que concluir que no existe el primero de los errores señalados.

Los señalamientos de error enumerados 2, 3, 4, 6, 7, 8 y 9 se refieren a la conducta del interfecto. Los agruparemos y discutiremos conjuntamente. Dicen así:

"2. La Corte cometió error en no permitir que al testigo Severo Fonseca se le hiciera por la defensa la siguiente pregunta: '¿En algunas ocasiones, además de darle una bofetada a la persona que no le complacía dándole dinero, no le daba un puñalada?'

"3. La Corte cometió error al ordenar que se eliminara de los autos la declaración del acusado diciendo que una cicatriz que tenía en la cara se la había hecho el interfecto Domingo Rosa como cinco o seis años (*sic*). (Páginas 86 y 87 de la transcripción.)

"4. La Corte cometió error al no permitir al acusado declarar sobre la conducta del interfecto y sobre actos específicos realizados por él en relación con el acusado, y al ordenar la eliminación de todos los detalles declarados por el referido acusado. (Páginas 95 y 96 de la transcripción.)

"6. La Corte cometió error al no permitir que el testigo Benigno Soto declarara sobre las denuncias que había presentado contra el interfecto Domingo Rosa por delito de acometimiento y agresión graves. (Pág. 115.)

"7. La Corte cometió error al no permitir que el testigo Félix Calzada declarara sobre la reputación del interfecto Domingo Rosa, por haberlo tenido veinte y ocho veces en la cárcel.

"8. La Corte cometió error al no permitir presentar en evidencia la hoja histórico-penal de Domingo Rosa por delito de portar armas prohibidas. (Pág. 134.)

"9. La Corte cometió error al no permitir que al testigo Francisco Cruz se le preguntara si tuvo que hacerle algo a Domingo Rosa porque le quiso quitar un dinero a la brava o a la mala, y si al referido interfecto le faltaba algo en su cuerpo." (Páginas 145 y 146.)

Tanto la prueba del fiscal como la de la defensa están perfectamente de acuerdo en que el interfecto no era persona de buena reputación. Ya hemos visto lo que con respecto a su conducta declararon los testigos del fiscal. En iguales o parecidos términos se expresaron los de la defensa. Esta cuestión, pues, estaba fuera de controversia y hubiera sido de vital importancia para el acusado si el jurado, por la prueba que se le presentó, hubiera podido considerar seriamente la contención del acusado en lo que a defensa propia respecta. Pero la prueba del acusado a ese respecto es tan débil que el jurado no le dió crédito alguno y ni siquiera redujo la calificación del delito a homicidio voluntario, indicando con ello que no creyó que en los momentos del crimen hubiese existido alguna agresión por parte del interfecto contra el acusado. Dió crédito a la del fiscal en el sentido de que sin que mediase provocación o palabras algunas el acusado hirió por la espalda al interfecto. Es de suponer que si el jurado hubiera creído que no siendo un caso de defensa propia el interfecto en alguna forma había atacado al acusado en el momento del crimen, en tal caso su veredicto, de acuerdo con las instrucciones que le transmitió la corte, hubiera sido el de homicidio voluntario y no el de asesinato que trajo. No estimando el jurado que se trataba de un caso de homicidio, estuviese o no justificado, la conclusión inevitable es que no dió crédito alguno a la prueba de la defensa en relación con la bofetada que alega el acusado haber recibido del interfecto. Por consiguiente la omisión de cualquier prueba acumulativa de mala conducta por parte del interfecto en adición a la que ya había recibido el jurado tanto

por parte del fiscal como de la defensa, en nada podía perjudicar los derechos sustanciales del acusado, pues asumiendo que el interfecto fuese todo lo malo que pudiera imaginarse, aun así ni el acusado ni ninguna otra persona hubieran estado justificados por esa sola razón para privarle de la vida. El hecho de que el interfecto cinco o seis años antes y aún la noche anterior al día de los sucesos hubiera agredido al acusado es prueba muy remota y consecuentemente inadmisible para establecer la defensa propia. A nuestro juicio no se cometieron los errores aquí discutidos y de haberse cometido, tendríamos que concluir que no perjudicaron los derechos sustanciales del acusado y que por lo tanto no justificarían la revocación de la sentencia. *People* v. *Forte,* 119 A.L.R. 1198; *Pueblo* v. *Ibern,* 31 D.P.R. 917; *Pueblo* v. *Cruz,* 33 D.P.R. 201.

■■ Consideremos ahora el quinto y último de los errores señalados por el apelante. El señalamiento de error dice así:

"5. La Corte cometió error al permitir que el Fiscal hiciera preguntas al acusado sobre actos específicos cometidos por él según así aparece en las páginas 107 y 109 de la transcripción."

En la página 106 de la transcripción de evidencia aparece el siguiente contrainterrogatorio hecho por el fiscal al acusado:

"P. La primera pregunta que le hizo su abogado a Ud. fué la siguiente; con esto voy a terminar con Ud. . . . que si Ud. había estado procesado antes de este acto. ¿Se recuerda de esa pregunta? Y Ud. contestó que no.

"R. Sí, señor, yo he estado cosa de diez (10) días . . .

"P. Ahora, yo voy a ayudarle a refrescar su memoria para ver si Ud. recuerda si allá para diciembre 23 de 1930, no cumplió Ud. una sentencia de treinta (30) días en la Cárcel de Distrito por acometimiento y agresión grave.

"DEFENSA: Nos oponemos, Sr. Juez.

"SR. JUEZ: Fundamento . . .

"DEFENSA: Por el mismo fundamento de que el Fiscal se ha opuesto a que se traigan actos específicos.

"SR. JUEZ: Propósito del Fiscal . . .

"FISCAL: El propósto de ·la pregunta es impugnar la credibilidad del testigo.

"SR. JUEZ: Con lugar la pregunta . . .

"DEFENSA: Tomamos excepción.

"SR. JUEZ: Si es con el propósito de impugnar la credibilidad del testigo.

"DEFENSA: Tomamos excepción.

"FISCAL: Y dígame también si en octubre 17 . . .

"DEFENSA:· Nos oponemos a la pregunta.

"SR. JUEZ: Sin lugar la oposición.

"DEFENSA: Tomamos excepción de la resolución de la Corte, en primer lugar, porque se trata de una pregunta que tiene la contestación asegurada el Fiscal y él no puede tratar de traer prueba en contra de lo que él mismo le saca a un testigo; y en segundo lugar, porque se quieren traer actos específicos que el Fiscal no ha permitido ni la Corte tampoco en cuanto a la reputación del interfecto, y solamente en el caso de que se hubiera permitido traer actos específicos del interfecto se podría traer actos específicos del acusado. Y a pesar de que se trata de un *misdemeanor,* no es motivo para atacar la credibilidad del testigo.

"FISCAL: Me voy a permitir hacer una aclaración, Sr. Juez.

"SR. JUEZ: Puede hacerla.

"FISCAL: Y es que, cuando una parte pone en *issue* la reputación, entonces en el turno de la repregunta de la otra parte se puede destruir esa cuestión mediante prueba de actos específicos.

"SR. JUEZ: La Corte quiere que el taquígrafo busque en el interrogatorio directo del testimonio del testigo si él delaró o· no declaró que él nunca había estado en la cárcel o había estado preso.

"DEFENSA: El declaró que no había sido procesado.

"SR. JUEZ: Si declaró que no había sido procesado, la Corte admite toda la prueba para impugnar la credibilidad del testigo en cuanto a ese extremo.

"DEFENSA: Anotamos muy respetuosamente una excepción a la resolución de la Corte.''

La defensa, al preguntar al acusado si había sido procesado alguna vez—contestando éste en la negativa—, abrió la puerta al fiscal para en el campo de la repregunta examinarlo en la forma en que lo hizo. No existió error alguno al permitirse al fiscal repreguntar al testigo sobre una materia que había sido objeto del examen directo.

*No existiendo, a nuestro juicio, ninguno de los nueve errores señalados por el apelante, procede desestimar el recurso y confirmar la sentencia apelada.*

El Juez Asociado Sr. Travieso no intervino.